USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/1/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
ELIZABETH KENNEDY,

                **Plaintiff,**

-against-

ROBERT BASIL, THE BASIL LAW GROUP P.C.,
ARTIFECT LLC, WFT REALTY LLC, WFT
FASHION LLC,

                **Defendants.**
------------------------------------------------------------- x

**18-CV-2501 (ALC)**

**OPINION & ORDER**

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff Elizabeth Kennedy (hereinafter, "Ms. Kennedy" or "Plaintiff") brings this action against Defendants Robert Basil, The Basil Law Group P.C., Artifact LLC, WFT Realty LLC, and WFT Fashion LLC (collectively, "Defendants") for violations of the Lanham Act including trademark infringement, 15 U.S.C. § 1114, federal unfair competition, 15 U.S.C. § 1125(A), and federal trademark dilution, 15 U.S.C. § 1125. Plaintiff also alleges violations of New York General Business Law §§ 349, 360-L as well as New York Civil Rights Law § 51. Plaintiff's Complaint includes state law claims for breach of contract, breach of fiduciary duty, malpractice, fraud, accounting, common law unfair competition, and unjust enrichment.

Plaintiff filed her Complaint on March 20, 2018. ECF No. 1 ("Compl."). On June 26, 2018, Defendants requested leave to file a motion to dismiss Plaintiff's Complaint. ECF No. 30. The Court granted Defendants' request, and the instant Motion to Dismiss for Lack of Jurisdiction was filed on July 2, 2018. ECF No 33. Plaintiff filed an Opposition to Defendants' Motion on August 10, 2018. ECF No 51. Defendants filed their Reply on August 19, 2018. ECF No. 52. Defendants' Motion is deemed fully briefed. After careful consideration, Defendants' Motion to Dismiss for Lack of Jurisdiction is hereby **DENIED**.

## BACKGROUND

Ms. Kennedy is a designer in the fashion industry, and she started Elizabeth Kennedy, LLC (hereinafter, the "Company") in 2007. Compl. ¶ 14. In 2012, Ms. Kennedy partnered with Jayne Harkness and each of them carried 50% interest in the Company. *Id.* ¶ 16. The Operating Agreement governing the Company included a provision that ensured that Ms. Kennedy "could continue to use her name in the event she was no long[er] a member of the Company." *Id.* ¶ 17. In December 2014, Ms. Kennedy, through the Company, applied for two trademark registrations of her personal name, "Elizabeth Kennedy", with the United States Patent and Trademark Office ("USPTO"). *Id.* ¶ 20. The "Elizabeth Kennedy" trademarks (the "KENNEDY Marks") were registered on September 14, 2015.[1]

With a desire to expand, Ms. Kennedy met with Mr. Basil, an attorney and part owner of a strategic support company named Artifect. *Id.* ¶¶ 24-26. After Mr. Basil indicated that he wanted to invest, the Operating Agreement was amended giving Mr. Basil an ownership stake in return for a line of credit for the Company. *Id.* ¶¶ 26-30. Ms. Kennedy and Mr. Basil put their agreement in writing by amending (the "First Amendment") the Operating Agreement. *Id.* ¶ 31. The First Amendment to the Operating Agreement also appointed Mr. Basil and his Law Firm as General Counsel for the Company. *Id.* ¶ 31. Mr. Basil hired Edward Colville, his personal accountant, to manage the Company's financials. *Id.*

In early 2016, WFT, a company wholly owned by Mr. Basil, provided the Company with at total of $310,000. *Id.* ¶¶ 37-38. Shortly thereafter, the Operating Agreement was amended for the second time. *Id.* ¶¶ 41-44. According to the Complaint, Mr. Basil also amended § 2.9 of the Operating Agreement to include a non-compete clause governing Ms. Kennedy should she

---

[1] Registration Nos. 4811444 and 4811445

terminate her membership. *Id.* ¶ 45. After securing additional loans and hiring Shan Reddy as the Chief Operating Officer of the Company, The Operating Agreement underwent a third amendment. *Id.* ¶¶ 49-59. The Company continued to experience financial difficulties into April 2017 leading to a fourth amendment of the Operating Agreement. *Id.* ¶¶ 68-72. In late 2017, as the Company contemplated dissolution, Mr. Basil resigned as the Company's managing member due to "conflicts of interest regarding the close-down." *Id.* ¶¶ 84-85. Ms. Kennedy attempted to assume the role as managing member, but her proposal was rejected. *Id.* ¶ 85.

Later in December, Mr. Basil claimed that Noah Bank, a client of Basil Firm who had provided an earlier loan to the Company, was the actual owner of the KENNEDY Marks. *Id.* ¶¶ 55, 88. On January 12, 2018, Mr. Basil proposed dissolution of the Company by selling the Company's assets, including the KENNEDY Marks. *Id.* ¶ 91. After a few days of contested discussions regarding the future of the company, on January 22, 2019, Ms. Kennedy ultimately declared insolvency and withdrew as a member of the Company. *Id.* ¶¶ 91-97. Shortly thereafter, Ms. Kennedy demanded that the Company change its name from "Elizabeth Kennedy, LLC" and assign the KENNEDY marks to Ms. Kennedy. *Id.* ¶ 98. Mr. Basil changed the name to "WFT Fashion LLC", but refused to assign the KENNEDY marks. *Id.* ¶ 99.

Ms. Kennedy's Complaint contains sixteen claims for relief. *See Id.* However, for the purpose of the instant motion, the relevant claims include the eighth, ninth, and twelfth. Plaintiff's eighth claim for relief alleges, in part:

> Defendants have used or intend to use in commerce, without Kennedy's permission, the KENNEDY marks in a manner that is likely to cause confusion mistake or deception with respect to Kennedy's KENNEDY marks, and is likely to cause confusion or mistake and to deceive purchasers as to the affiliation, connection, approval, sponsorship or association of Kennedy and/or her goods, services and commercial activities, on the one hand, with these Defendants and/or their respective goods, services or commercial activities, on the other hand.

*Id.* ¶ 153. The eighth claim for relief seeks an award of exemplary damages under the common law, as well as treble damages and increased profits under 15 U.S.C. § 1117. Plaintiff's ninth claim alleges willful and unauthorized use of Plaintiff's claims – a violation of 15 U.S.C. § 1117. *Id.* ¶¶ 161-76. The twelfth claim for relief alleges dilution of the KENNEDY marks constituting a violation of 15 U.S.C. § 1125(c). *Id.* ¶¶ 194-203.

## STANDARD OF REVIEW

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 1991)). In evaluating whether the plaintiff has met that burden, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (citing *Potter*, 343 F.3d at 623). However, a court may refer to evidence outside of the pleadings. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

## DISCUSSION

Defendants claim that this Court does not have subject matter jurisdiction over this case because it is a contract dispute that happens to concern intellectual property and does not meet the standards for federal question jurisdiction. Def.'s Mem. Supp. Mot. 11, ECF No. 34 (hereinafter, "Def's Memo"). Plaintiff counters by claiming that the Complaint sufficiently alleges trademark claims under the Lanham Act, and thus federal question jurisdiction is adequately conferred. Pl.'s Mem. Opp. Mot. 11, ECF No. 51 (hereinafter, "Pl. Opp.). After

careful consideration, this Court finds that Plaintiff's Complaint has adequately alleged a question arising under federal law, thus this Court has subject matter jurisdiction over the case.

I. **The *T.B. Harms* Test Articulates The Standard By Which Jurisdiction For Claims Mixing Contract And Trademark Questions Is Determined**

Federal district courts have original jurisdiction over civil actions arising under Acts of Congress pertaining to patents, copyrights, and trademarks, including claims asserting unfair competition. 28 U.S.C. § 1338. Jurisdictional questions pertaining to complaints that assert intertwined contract and intellectual property claims pose some of the "knottiest procedural problems" in intellectual property jurisprudence. *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 347 (2d Cir. 2000) (quoting 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.01[A], at 12-4 (1999)). The standard by which subject matter jurisdiction is analyzed was originally promulgated by the Second Circuit in *T.B. Harms Co. v. Eliscu*. 339 F.2d 823 (2d Cir. 1964). Under the *T.B. Harms* test, "an action arises under the Copyright Act if and only if [1] the complaint is for a remedy expressly granted by the Act ... [2] or asserts a claim requiring construction of the Act ..." *Bassett*, 204 F.3d at 349 (quoting *T.B. Harms*, 339 F.2d at 828).

In *Bassett*, the Second Circuit clarified and reaffirmed the *T.B. Harms* test by explaining that "[w]hen a complaint alleges a claim or seeks a remedy provided by the Copyright Act, federal jurisdiction is properly invoked." *Bassett*, 204 F.3d at 355. More specifically, if the complaint alleges copyright infringement and seeks an appropriate remedy, such as an injunction, the jurisdictional requirements are met. *See id.* "The analysis under T.B. Harms turns on what is alleged on the face of the complaint," and "has the important virtue of avoiding premature (and therefore potentially erroneous) judgments." *Id.* at 329.

While *T.B. Harms* relates to copyright claims under the Copyright Act, the similarities between copyright and trademark infringement "urge the same approach in trademark litigation."

*Federal Treasury Enterprise Sojuzplodoimport v. Spirits Intern. N. V.*, 623 F.3d 61, 69 (2d Cir. 2010). If a plaintiff pleads "federal trademark infringement claims and [seeks] federal statutory remedies" then subject matter jurisdiction is present. *See id.* at 70. Courts in this district have consistently interpreted these murky trademark and contract claims in accordance with *T.B. Harms. See Foxrun Workshop, Ltd. v. Klone Mfg., Inc.*, 686 F.Supp. 86, 90 (S.D.N.Y. 1988). "Where a complaint alleges a federally conferred right, such as ... a trademark ... then alleges violations of that right and requests remedies provided by federal statute, this should be enough to confer federal jurisdiction. The fact that such a claim ... present[s] certain contract issues should not remove it from that jurisdiction." *Daniel Wilson Prods., Inc. v. Time-Life Films, Inc.*, 736 F.Supp. 40, 43 (S.D.N.Y. 1990); *see Ryan v. Volpone Stamp Co., Inc.*, 107 F.Supp.2d 369, 377 (S.D.N.Y. 2000) ("Plaintiff's additional claims for breach of contract and violations of New York State statutory law notwithstanding, his assertion of a claim for infringement and prayer for remedies expressly granted by the Lanham Act is sufficient to confer subject matter jurisdiction upon this court.").

## II. Plaintiff's Complaint Satisfies The *T.B. Harms* Test As It Seeks Remedies Expressly Granted By The Act And Asserts A Claim Requiring Construction Of The Act

As stated, the *T.B. Harms* test provides two ways for a mixed trademark and contract claim to satisfy the jurisdictional requirements of the Federal courts. *See T.B. Harms*, 204 F.3d 343. A plaintiff can either seek a remedy expressly granted by the Act or, in the alternative, a plaintiff can assert a claim requiring construction of the Act. *See id.* Here, Plaintiff asserts a claim under either avenue provided by *T.B. Harms*.

First, Plaintiff's complaint alleges claims arising under the Lanham Act. *See* Compl. The Lanham Act protects against trademark infringement in a plethora of ways. *See* 15 U.S.C. §§ 1051 *et seq.* To be successful on a Lanham Act claim, a plaintiff must demonstrate that "(1) it

has a valid mark that is entitled to protection ... that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale or advertising of gods or services, (5) without the plaintiff's consent." *1-800 Contacts, Inc. v. WhenUCom, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005) (internal quotations omitted); *see* 15 U.S.C. §§ 1051 *et seq*. Plaintiff's eighth claim for relief alleges that Plaintiff "owns all right, title and interest in and to the KENNEDY marks," and that "Defendants have used or intend to use in commerce, without Kennedy's permission, the KENNEDY marks." Compl. ¶¶ 151-153, 198. Further, Plaintiff's ninth and twelfth claims for relief allege dilution and unauthorized use of the KENNEDY marks in ways that "constitute[] a false designation of origin as such conduct is likely to cause confusion and/or to deceive users and consumers as to the origin, sponsorship, affiliation, connection and/or association of Kennedy with Defendants' goods and/or services." *Id.* ¶ 175; *see* 15 U.S.C. § 1125. Assessing Plaintiff's Lanham Act claims "require[s] construction of the [Lanham] Act," and thus Plaintiff satisfies the first of two options providing for subject matter jurisdiction under the *T.B. Harms* test. *See Bassett*, 204 F.3d at 349.

Even if Plaintiff's claims did not "require[] construction of the [Lanham] Act," at a minimum, Plaintiff specifically seeks a "remedy expressly granted by the [Lanham] Act." *Bassett*, 204 F.3d at 349. Depending on the circumstances of any particular trademark claim, the Lanham Act provides for lost profits, damages (including statutory and treble damages), costs, attorney fees, and injunctive relief, among other things. *See* 15 U.S.C. §§ 1114-1117. Here, Plaintiff seeks all of the above. Plaintiff claims that she is entitled to "an award of ... treble damages and increased profits under 15 U.S.C. § 1117." Compl. ¶¶ 160, 176. Plaintiff also claims to be "entitled to an injunction restraining Defendants ... from engaging in further acts of infringement." *Id.* ¶¶ 157, 173. Finally, Plaintiff claims that, due to Defendants' willful

7

infringement, Plaintiff is "entitled to all remedies available under 15 U.S.C. §§ 1117 and 1118." *Id.* ¶ 203. Thus, by seeking remedies expressly granted by the Lanham Act, Plaintiff has satisfied the second option conferring subject matter jurisdiction as provided by the *T.B. Harms* test. *See Bassett*, 204 F.3d at 349; *Spirits,* 623 F.3d at 69.

## CONCLUSION

Although Plaintiff's claim presents a mixed question of contract and trademark, Plaintiff has satisfied her burden by alleging claims and seeking remedies arising under the Lanham Act in a manner sufficient to confer subject matter jurisdiction over this case under 28 U.S.C. § 1338. For the foregoing reasons, Defendants' Motion to Dismiss is hereby **DENIED**.

**SO ORDERED.**

**Dated:** **March 1, 2019**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**